## Hiden Homes, Inc., v. Sincox et ux.

*Albert Blumberg,* for plaintiff.

*Ralph L. Lindenmuth* and *W. Glen George,* for defendants.

TOAL, J., March 15, 1948.—This is an appeal from a judgment for possession of premises No. 2609 Mc-

Carey Street, Highland Gardens, in the City of Chester, Delaware County, Pa. Judgment was entered on January 12, 1948, in favor of plaintiff before a justice of the peace, and on January 21, 1948, defendants appealed to this court by filing their bond, conditioned for the payment of costs accrued and to accrue, and by subscribing to the required appeal affidavit.

The issue before this court has been raised by filing in the office of the prothonotary a certified copy of the transcript of the proceedings had before the justice of the peace. In addition, counsel for defendants filed a demurrer to the transcript of the justice of the peace now of record. The court, therefore, in deciding this case does so upon the record as it now stands, which consists of the aforementioned transcript from the docket of the justice of the peace and a demurrer in writing.

The record shows that the premises in question were leased by plaintiff to defendants on April 11, 1946, for a term of one month, and thereafter from month to month. The lease provided for termination upon 60 days' notice. Notice of termination dated October 16, 1947, was served on defendants October 17, 1947, requiring them to leave the demised premises on or before December 16, 1947. The reason given defendants for the termination of the lease was that plaintiff "had contracted to sell" the leased premises to one Gerald Marvin Schaffer for his immediate and personal use and occupancy as housing accommodations.

There is referred to in the record a writing labeled "Option to Purchase Real Estate" dated October 18, 1947, by the terms of which said Schaffer was required to pay $500 immediately upon entering into the agreement, and to make further payments of $5 each month. Plaintiff agreed to give said Schaffer an irrevocable option to purchase the premises for $6,500 at any time on or before October 1, 1966. Plaintiff further obligated itself to complete settlement for the premises

within 30 days after receipt of notice in writing from the purchaser, and agreed that the initial payment of $500 and the monthly payments be applied against the purchase price. The agreement further gave said Schaffer the immediate possession and occupancy of the premises under the terms of a written lease.

Defendants did not vacate the demised premises and plaintiff instituted the present proceedings for possession on January 3, 1948, before the justice of the peace. The record shows that a hearing was held before the justice of the peace on January 12, 1948, and eo die, judgment was entered against defendants requiring them to forthwith deliver actual possession of the premises to plaintiff or its assigns. Appeal from this judgment having been taken, the case having been formally argued before the court en banc and written briefs submitted by both sides, said case is now ready for a decision by this court.

The question to be determined is whether or not the eviction proceedings were violative of the provisions of section 209 (*a*) (3) of the Federal Rent Control Act of 1947, which provides as follows:

"Sec. 209 (a)   No action or proceeding to recover possession of any controlled housing accommodations with respect to which a maximum rent is in effect under this title shall be maintainable by any landlord against any tenant in any court, notwithstanding the fact that the tenant has no lease or that his lease has expired, so long as the tenant continues to pay the rent to which the landlord is entitled unless . . .

" (3)   the landlord has in good faith contracted in writing to sell the housing accommodations to a purchaser for the immediate and personal use and occupancy as housing accommodations by such purchaser; . . ."

Analysis of subsection (3) supra shows that it was the intent of Congress to permit a landlord to evict a tenant in order to make the real estate available for

housing accommodations for a purchaser, whenever the following elements were present in a particular case:

1. The landlord has acted in good faith.

2. The contract is in writing.

3. The landlord has "contracted to sell" the demised premises.

4. The purchaser intends to use said real estate for his immediate and personal use and occupancy as housing accommodations.

The record in this case shows that the four elements mentioned above are present. There is nothing to indicate lack of good faith by the landlord or the purchaser. The defendants do not suggest lack of good faith and it is manifest that the agreement between the parties is bona fide, and not a mere subterfuge used to evict defendants. The Federal Rent Control Act was designed to insure good faith, and the court is of the opinion that in entering into the so-called "Option to Purchase Agreement" the landlord exercised good faith in this case.

The second element, that the contract be in writing, is self-evident.

The third element, as to whether or not the landlord "contracted to sell" the demised premises, is the one which is definitely questioned by defendants, and is the real crux of the problem before the court. Defendants pressed the point that the agreement in writing is merely an option and not an agreement of sale, maintaining that the former is unilateral whereas the latter is bilateral. This distinction seems rather unimportant when the wording of the Federal Rent Control Act is examined, because Congress did not use the words "Agreement of Sale" but employed the expression "Contracted to Sell". Likewise the label given the agreement, namely: "Option to Purchase Real Estate" is not important, because it is the duty of the court to

interpret the agreement no matter what the parties themselves may call it. Congress undoubtedly intended that the landlord not only act in good faith, but that he show in writing that he has "contracted to sell" the housing accommodations to a purchaser.

Examination of the document in question shows that the landlord in this case absolutely bound himself to sell the premises to Schaffer, and unless there was a breach on the part of Schaffer by nonpayment of the monthly installments, or by nonpayment of the rent under the written lease, or by the failure to settle for the property on or before October 1, 1966, the landlord could not lawfully abrogate the agreement. True it is, at any time after the agreement was signed, Schaffer could drop the bargain, by permitting the landlord to retain as liquidated damages the down payment of $500, and also to retain as additional liquidated damages all of the monthly payments of $5 paid to the time of the breach. But the Federal Rent Control Act makes no mention of any obligation or duty on the part of the purchaser. It merely sets up a standard which must be met by a landlord in order that he may avail himself of the right to maintain eviction proceedings against a tenant. Therefore, if the landlord firmly binds himself in writing to sell the housing accommodations to a purchaser, whether that purchaser may be the subject of a bill in equity to enforce specific performance of the contract, or whether he may be merely an optionee, is irrelevant. The fact that the landlord is bound, in good faith, is the criterion.

The fourth element, that the purchaser intends to use the real estate for immediate or personal use and occupancy as housing accommodations, is fully met by what appears in the record in this case. Under the terms of the written agreement it was the obligation of the landlord to give physical possession of the premises to the purchaser on November 1, 1947. In order to do this plaintiff gave defendants notice to

terminate their lease as provided for in said lease. It is no fault of the landlord that defendants did not voluntarily, after receiving said notice, vacate the premises. The landlord and the purchaser intended that said purchaser use the real estate for his immediate and personal use and occupancy as housing accommodations.

From the above, it is concluded that the written instrument, which is the subject of this case, legally obligates the landlord to sell to the purchaser the specifically described real estate, for the specified consideration or purchase price; and that the landlord is further legally obligated to make final settlement and to convey the legal title to the purchaser within 30 days after receiving notice in writing from him. The plain meaning of the instrument is that the landlord has "contracted to sell" the property to the purchaser, since there is no way that he can legally avoid giving title thereto at the time stipulated by the purchaser.

The weakness of defendants' case is that they rely upon the fact that the purchaser may give up the bargain. Defendants fail to recognize that the act of Congress does not require mutuality of obligation in a contract to sell real estate. If this requirement was intended, Congress would have provided that before a tenant may be evicted the premises in question would have to be "sold". Congress did not say this but said, "contracted to sell" the property.

Another approach to this matter is that if Congress only intended a landlord to have the right to evict a tenant after the sale of the premises had been consummated, it could have provided that the right of eviction be only with the purchaser after obtaining the legal title to the property. The fact that the statute permits eviction by the landlord, rather than by the purchaser, indicates that Congress had in mind situations where the purchaser would have the right to possession before final settlement. As long as the landlord has "con-

tracted to sell", the statutory requirement has been met.

Accordingly, the court finds that plaintiff in this case has fully complied with the letter and the spirit of the act of Congress, and that the eviction proceedings have been in conformity with law. Plaintiff, therefore, is entitled to the judgment of possession entered by the justice of the peace, and the appeal in this case must be dismissed. The following order is, therefore, made:

### Order

And now, to wit, March 15, 1948, it is ordered that the appeal in this case be, and the same is, hereby dismissed, the demurrer filed of record in this case is overruled and plaintiff is granted the right to proceed with the eviction proceedings according to law, in the same manner as if no appeal had been taken or demurrer filed.